Laurence PUGH and Rena Pugh, Petitioners,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF HUMAN RESOURCES, HOSPITALS AND MEDICAL CARE ADMINISTRATION, Respondent.

No. 6089.

District of Columbia Court of Appeals.

Argued Feb. 16, 1972.

Decided July 17, 1972.

---

Caryl S. Cole, Washington, D. C., for petitioners.

E. Calvin Golumbic, Asst. Corp. Counsel, with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for respondent.

Before KELLY, GALLAGHER and REILLY, Associate Judges.

KELLY, Associate Judge:

Petitioners here challenge a finding by the District of Columbia Department of Human Resources, Hospitals and Medical Care Administration that they were ineligible for Medicaid benefits for the six-month period running from April 1 to September 30, 1971, contending that the Department's determination of ineligibility was based on an incorrect and unlawful standard under the statutes governing administration of federally funded Medicaid programs.

Laurence and Rena Pugh are a married couple with three children. Mr. Pugh suffers from pulmonary emphysema, and is totally disabled. The Pughs had been recipients of public assistance and, as such, had also received Medicaid benefits.[1] However, in April of 1971, after they had become eligible for Social Security benefits, their names were removed from the public assistance rolls. Moreover, because they were then receiving a monthly income of $488,[2] they were notified that they were no longer eligible for Medicaid benefits.[3]

Petitioners requested a hearing to review the determination of ineligibility, contending that respondent's standard of eligibility did not conform with public assistance standards set forth in City Council Regulation No. 70–36 (July 7, 1970) and thus violated the mandate of title XIX of the Social Security Act,[4] which requires Medicaid eligibility standards to be comparable to public assistance standards if the program is to continue receiving federal funds.[5] Petitioners conceded at the hearing that they were over-income even if the more liberal standard of eligibility were to be applied, but argued that they were likely to incur substantial medical expenses which would make them eligible for Medicaid under the standard they advocated. The hearing examiner rejected their claim and this appeal follows.

Although petitioners have raised an issue of public concern relating to the "medically needy" of this city, we do not decide the question on its merits. Respondent argues, and we agree, that no justiciable case or

---

1. 42 U.S.C. § 1396a(a) (10) requires that federally funded state Medicaid plans provide medical assistance to recipients of categorical public assistance. The District of Columbia Public Assistance Act of 1962 established five categories of assistance—(1) Old Age Assistance; (2) Aid to the Blind; (3) Aid to the Disabled; (4) Aid to Dependent Children; (5) General Public Assistance. (D.C.Code 1967, § 3–202(a).)

   A state may also, at its option, include in its plan individuals who are not receiving categorical assistance but whose resources and income are insufficient to meet the costs of necessary medical care. The District of Columbia has elected to exercise this option.

2. Petitioners received a $35 monthly increase in their Social Security payments in June of 1971, retroactive to January 1, 1971. Their total monthly income is now $523, composed of $385 in Social Security and $138 in veterans' benefits.

3. A family of five is eligible for Medicaid if its semi-annual income does not exceed $1970 or if, during the six-month period, it incurs medical and/or hospital expenses equal to the amount by which its semi-annual income exceeds that figure. See D.C. Medical Assistance Program Letter, State Agency No. 17, March 30, 1970, and 42 U.S.C. § 1396a(a) (17).

4. 42 U.S.C. § 1396.

5. In 1967, Congress authorized the Commissioner of the District of Columbia to establish a Medicaid program under a plan approved by the Secretary of H.E.W. which would qualify for federal financial assistance. In order to so qualify, the plan must conform with title XIX of the Social Security Act, 42 U.S.C. § 1396. D.C.Code 1967, § 1–266 (Supp. V, 1972).

controversy exists upon which this court can rule.

> A justiciable controversy is . . . distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy *admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.* . . . [Citations omitted; emphasis supplied.] Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 240–241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937).[6]

In this case, even under the standard of eligibility petitioners advocate, they were still ineligible for Medicaid. The hearing was held in the fifth month of the pertinent six-month period and, although petitioners argued that there was a substantial likelihood of their incurring high medical expenses, such expenses had not yet accrued. Thus, the dispute remained abstract and hypothetical. Since the Pughs were over-income in any event, there is no relief this court can grant them at this time. Were we to render an opinion at this point, it would merely be advisory, and we have previously "seriously question[ed] the practice of rendering advisory opinions on important and potentially far-reaching questions . . . ."[7] In our judgment, it is a wise policy

> to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. . . . Davis v. Ichord, 143 U.S.App.D.C. 183, 195, 442 F.2d 1207, 1219 (1970) (concurring opinion, Judge Leventhal).

We note that the record before us contains an Affidavit of Petitioners' Attorney showing that medical bills totalling over $900 were accrued and submitted to respondent for the six-month period following the one in question.[8] However, there is no indication of what action, if any, has been taken by respondent on this matter. If, for this later period, respondent again applies the contested standard of eligibility and denies petitioners Medicaid benefits, a justiciable case or controversy will exist, providing a basis for judicial review.[9]

Appeal dismissed.

---

6. *Cf.* Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941); Lion Mfg. Corp. v. Kennedy, 117 U.S.App.D.C. 367, 330 F.2d 833 (1964); John P. Agnew & Co. v. Hoage, 69 App.D.C. 116, 99 F.2d 349 (1938).

7. Kartsonis v. District Unemployment Comp. Bd., 289 A.2d 370, 371 n. 3 (1972).

8. Petitioners would then be eligible to receive Medicaid benefits according to the standard of eligibility they advocate whereas, according to respondent, they must accrue medical expenses of $1018 before becoming eligible.

9. We also note that in the recent case of Junghans v. Department of Human Resources, D.C.App., 289 A.2d 17 (1972), Order of the Commissioner No. 70–265, which set out the payment formula for categorical assistance programs, was held to be invalid because it was not enacted in compliance with the notice and publication requirements of the District of Columbia Administrative Procedure Act. New rules must now be established for a public assistance payment formula. What effect, if any, this will have on Medicaid eligibility standards remains to be seen.